563 S.E.2d 660

**BEAUFORT COUNTY, South Carolina
and Dorothy Gnann, Appellants,**

v.

**Flora G. TRASK; the City of Beaufort, South Carolina;
the State of South Carolina; and the Town of Port
Royal, South Carolina, Respondents.**

**No. 3490.**

Court of Appeals of South Carolina.

Heard April 9, 2002.
Decided May 13, 2002.

Jack M. Scoville, Jr., of Georgetown; and Frederick M. Corley, of Beaufort, for appellants.

William B. Harvey, III, of Harvey & Battey; Scott W. Lee, both of Beaufort; and Attorney General Charles M. Condon and Senior Assistant Attorney General C. Havird Jones, Jr., both of Columbia, for respondents.

GOOLSBY, Judge:

Appellants Beaufort County and Dorothy Gnann brought this action seeking a declaratory judgment invalidating an annexation ordinance enacted by the City of Beaufort (the City). The trial court held the annexation was proper and Appellants lacked standing to challenge the ordinance. We affirm.

## FACTS

On January 11, 1999, Flora G. Trask petitioned to have the City annex both her property on Upper Cane Island and the portion of the Beaufort River located between the City and Trask's property. Trask made her request using the "100–per cent" method under South Carolina Code section 5–3–150.[1] On February 9, 1999, the Beaufort City Council granted the petition and enacted an ordinance providing for the City's annexation of both Trask's property and the waters and marshes of the Beaufort River between that property and the previous city limits.

On April 7, 1999, Appellants filed a notice of intention to contest the annexation ordinance. On May 6, 1999, Appellants filed their summons and complaint in the present case.

On May 7, 1999, the Town of Port Royal sued the City, alleging that the Town's municipal boundaries extended to the eastern marsh of the Beaufort River and that the City, in enacting the ordinance, had crossed those water boundaries to gain contiguity to Trask's property on Upper Cane Island. The action was dismissed in September 1999 pursuant to an agreement between the Town and the City that devised a clear line of delineation between the two municipalities. The agreement provided the City would modify the water boundaries in the ordinance and the Town would acknowledge the annexation ordinance, as modified, was "legal and valid."

On December 17, 1999, Appellants amended their pleadings to join Trask, the State of South Carolina, and the Town as defendants. In their amended complaint, Appellants alleged three grounds for invalidating the ordinance: (1) the property sought to be annexed was not contiguous to the City; (2) the

---

1. S.C.Code Ann. § 5–3–150(3) (Supp.2001). This paragraph provides in pertinent part as follows:

   [A]ny area or property which is contiguous to a municipality may be annexed to the municipality by filing with the municipal governing body a petition signed by all persons owning real estate in the area requesting annexation. Upon the agreement of the governing body to accept the petition and annex the area, and the enactment of an ordinance declaring the area annexed to the municipality, the annexation is complete.

   The legislature made several revisions to this paragraph in 2000, none of which are at issue in this appeal.

City Council's actions were "arbitrary, irrational and capricious"; and (3) no one owning an interest in the waters and marshes of the Beaufort River had consented to the annexation of that property.

A full merits hearing took place on June 7, 2000.[2] On July 21, 2000, the trial court granted judgment to the defendants, holding (1) contiguity was not destroyed by the waters and marshlands separating the Trask property from the city limits; (2) Appellants lacked standing to attack the annexation ordinance; (3) Appellants nevertheless failed to meet their burden of proof to show that the City Council's actions were arbitrary, irrational, and capricious; and (4) the allegation that the State of South Carolina, as purported owner of the waters and marshlands annexed by the City, did not consent to the annexation was insufficient to invalidate the annexation petition.

## DISCUSSION

1. Appellants first argue the trial court, in holding they lacked standing to pursue their action, improperly discredited this court's opinion in *St. Andrews Public Service District v. City of Charleston*[3] as "not yet final" and being in conflict with two supreme court decisions.[4] Notwithstanding the trial court's remarks, we hold the present case is distinguishable from *St. Andrews*.

*St. Andrews* involved the dismissal of a lawsuit brought by the St. Andrews Public Service District challenging two annexation ordinances enacted by the City of Charleston.[5] The trial court dismissed the action on the ground that,

---

**2.** The master-in-equity for Beaufort County heard the case in his capacity as special circuit judge under a standing order from the South Carolina Supreme Court.

**3.** 339 S.C. 320, 529 S.E.2d 64 (Ct.App.2000), *cert. granted,* (Feb. 21, 2001).

**4.** The two supreme court decisions cited by the trial court were *State ex rel Condon v. City of Columbia,* 339 S.C. 8, 528 S.E.2d 408 (2000), and *State Budget and Control Board v. City of Columbia,* 308 S.C. 487, 419 S.E.2d 229 (1992).

**5.** *St. Andrews,* 339 S.C. at 322, 529 S.E.2d at 65.

because the Public Service District did not own real property in the area and had no proprietary interest or statutory rights in the annexed area, it lacked standing to pursue the challenge.[6] This court reversed, observing that "the Charleston City Council attempt[ed] to establish contiguity, not by merely crossing a roadway to annex an adjacent property, but by annexing the *length* of a road to establish a common boundary"[7] and further noting that "[t]hat kind of annexation is not authorized by the laws of this state."[8] Based on the supreme court's recognition that private individuals have standing to attack a void annexation, that is, one not authorized by law,[9] this court concluded the Public Service District, even though without either proprietary interests or statutory rights in the annexed area, had standing to challenge the validity of the annexation ordinances at issue. In other words, if a municipality annexes property that is beyond its reach, the annexation must fail as a matter of law, even when there was compliance with the statutory requirements to effect the annexation. It follows, then, that if an annexation is void as a matter of law, a plaintiff need not "assert an infringement of its own proprietary interests or statutory rights in order to establish standing" to challenge it.[10]

On appeal, Appellants appear to assert the annexation was void because of (1) a lack of contiguity, and (2) the failure of the owner of the intervening property to join in the annexation petition. They further argue that, because of the absence of consent from one of the purported owners of the annexed properties, the annexation is necessarily defective under the 100–per cent method and therefore must fail as a matter of law. We find these arguments unavailing.

■ As to the alleged lack of contiguity, Appellants argue, "The law authorizes the City to annex only contiguous territo-

---

6. *Id.* at 323–24, 529 S.E.2d at 66.

7. *Id.* at 326, 529 S.E.2d at 67 (emphasis added).

8. *Id.*

9. *Quinn v. City of Columbia*, 303 S.C. 405, 401 S.E.2d 165 (1991).

10. *State Budget and Control Bd. v. City of Columbia*, 308 S.C. at 489, 419 S.E.2d at 230.

ry, and since the property purportedly annexed is not contiguous because the owner of the intervening property has not petitioned for its annexation, the annexation is void." We interpret this argument to mean that the requirement of contiguity was not met because of the presence of the waters and marshes of the Beaufort River between the Trask property and the City. We agree with the trial court, however, that the separation between the City and the Trask property by the waters and marshes of the Beaufort River did not destroy contiguity.[11]

■ As to the failure of the owner of the intervening property to sign the annexation petition, Appellants argue the absence of consent by the State of South Carolina, which owned the area of the Beaufort River annexed by the City, made the annexation void under the 100–per cent method.[12] We agree with the trial court, however, that this challenge concerned only the method of the annexation rather than the annexation itself. The alleged defect went to only the issue of compliance with the statutory requirements for annexation.

---

11. *See Bryant v. City of Charleston*, 295 S.C. 408, 411, 368 S.E.2d 899, 901 (1988) ("[C]ontiguity is not destroyed by water or marshland within either the annexing municipality's existing boundaries or those of the property to be annexed merely because it separates the parcels of highland involved.").

After the opinion in *St. Andrews* was filed, the legislature enacted South Carolina Code section 5–3–305, which defines "contiguous" as the term applies to annexation and further states:

Contiguity is not established by a road, waterway, right-of-way, easement, railroad track, marshland, or utility line which *connects* one property to another; however, if the connecting road, waterway, easement, railroad track, marshland, or utility line *intervenes* between two properties, *which but for the intervening connector would be adjacent and share a continuous border, the intervening connector does not destroy contiguity.*

S.C.Code Ann. § 5–3–305 (Supp.2001) (emphases added). This section took effect May 1, 2000, which was after the reading of the annexation ordinance, but before the trial court held the merits hearing. 2000 S.C. Acts 250, § 3. Although the trial court did not mention this section in the appealed order, we cite it as additional support for our holding that the body of water between the Trask property and the City did not destroy contiguity.

12. Although the State was named as a defendant in this action, it filed no responsive pleadings and was thus in default. Furthermore, although the State is listed as a party in this appeal, no brief has been filed on the State's behalf.

It would not preclude the City from annexing the property if the required statutory procedures had been followed. Appellants, then, have shown that the ordinance was merely voidable rather than void.[13]

■ 2. Appellants further contend that, because the County alleged infringement of its statutory rights and proprietary interests, it had standing to maintain this action. We find no reversible error.

The trial court held that the County "cannot show that there has been an infringement of its own proprietary interests or statutory rights." In so holding, the trial court focused on the proof adduced at the merits hearing of such an infringement rather than on the allegations in the complaint.

Assuming without deciding that the complaint contained allegations sufficient to give the County standing to challenge the annexation ordinance, we nevertheless hold there is ample authority to affirm the trial court's determination that the County's failure to prove these allegations at the merits hearing ultimately defeated its claim to standing.[14] Moreover, Appellants have not argued in their brief that the trial court erred in finding they made an insufficient showing at the

---

13. See Quinn, 303 S.C. at 407, 401 S.E.2d at 167 (holding opponents to an annexation failed to establish standing in that they challenged only "the annexation method in seeking to have the annexation declared void and raise[d] no claim that it was unauthorized by law"); St. Andrews, 339 S.C. at 323, 529 S.E.2d at 65 ("One cannot merely challenge the methods by which the annexation occurred, but must allege the annexation is unauthorized by the laws of this State.").

14. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (stating elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case"; therefore, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation"), cited in Beaufort Realty Co. v. Beaufort County, 346 S.C. 298, 301 and 303, 551 S.E.2d 588, 589 and 590 (Ct.App.2001), cert. denied, (March 6, 2002); Shillito v. City of Spartanburg, 214 S.C. 11, 22, 51 S.E.2d 95, 99 (1948) ("As a rule, private citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally.") (emphasis added).

merits hearing that the County had standing to pursue this action.[15]

3. Gnann argues she has standing to pursue this action by virtue of the South Carolina Uniform Declaratory Judgments Act [16] and her status as a taxpayer. We disagree.

In support of her argument, Gnann cites *Sloan v. School District of Greenville County*[17] for the proposition that to establish standing she need only demonstrate a justiciable controversy. The presence of a justiciable controversy, however, does not by itself give a litigant standing to sue. As the supreme court has stated, standing requires "a personal stake in the subject matter of the lawsuit, *i.e.*, one must be a real party in interest."[18] With regard to taxpayer standing, "[t]he general rule is that a taxpayer may not maintain a suit to enjoin the action of State officers when he has no special interest and his only standing is the exceedingly small interest of a general taxpayer."[19] Stated another way, absent a truly individual injury, Gnann, as a taxpayer plaintiff, must demonstrate some overriding public purpose or concern to confer standing to sue on behalf of her fellow taxpayers.[20]

---

**15.** *See* Rule 207(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal."); *First Sav. Bank v. McLean*, 314 S.C. 361, 444 S.E.2d 513 (1994) (deeming an issue abandoned because the appellant failed to provide pertinent argument or supporting authority); *Biales v. Young*, 315 S.C. 166, 432 S.E.2d 482 (1993) (stating the appellate court will affirm a ruling if the complaining party does not challenge that ruling).

**16.** S.C.Code Ann. §§ 15–53–10 through –140 (1976 & Supp.2001).

**17.** 342 S.C. 515, 537 S.E.2d 299 (Ct.App.2000).

**18.** *Evins v. Richland County Hist. Pres. Comm'n*, 341 S.C. 15, 21, 532 S.E.2d 876, 879 (2000).

**19.** *Crews v. Beattie*, 197 S.C. 32, 49, 14 S.E.2d 351, 357–58 (1941).

**20.** The prerequisites for challenging a municipal ordinance based on taxpayer standing has been generally described as follows:

[T]axpayers are not authorized to maintain a suit to test the validity of an ordinance simply because they are taxpayers. They must *show* that the effect of the ordinance will be to increase their burden of taxation, to divert a fund from a purpose intended by law, or to affect them differently from other citizens in a similar position. It is not sufficient that they maintain the proceeding merely as a citizen to

On appeal, Appellants argue only that Gnann had taxpayer standing because of the allegations in the complaint that "the actions of the city in annexing the subject property are void and were done without lawful authority" and would therefore result in the expenditure of municipal funds to provide services to the annexed territory. It would appear to us, then, that Gnann has not alleged any injury unique to her as a taxpayer. Also, given our determination that the annexation was voidable rather than void, we agree with the trial court that Gnann failed to demonstrate an overriding public purpose or concern that would give her taxpayer standing to challenge the annexation.[21]

**AFFIRMED.**

HEARN, C.J, and HOWARD, J., concur.

---

protect abstract rights. Nor does mere difference in degree of interest of one taxpayer from that of another in itself entitle the former to maintain a suit to test the validity of the ordinance. A taxpayer, at large, of a municipality, having no private interest in the question any more than other taxpayers, cannot maintain a suit in equity, as against the public authorities, to set aside or prevent illegal acts.

6 Eugene McQuillin, *The Law of Municipal Corporations* § 20.19 (1998) (emphasis added).

**21.** *See Quinn,* 303 S.C. at 407, 401 S.E.2d at 166–67 ("Generally, unless an annexation ordinance is 'absolutely void', *i.e., not authorized by law,* private individuals may not challenge its validity.") (emphasis in original).